Good morning, your honors. Renee Donnie, representing Ascendiant Capital Group. I think today would be a good start if I gave a brief recital of the factual background and some of the procedural flaws that would make the argument more clear as to what my client is asking today. We want a double recovery. Let's get to the heart of it here. I don't understand how under the jury's verdict you get paid double the damages when it's a simple breach of contract action with a finding of liability. You subtract the set-off and that's the net balance. Well, your honor, I believe that this case is distinguishable from any other case about double recovery. If you look at the facts, the note was for $500,000 plus interest. The evidence was put on which was $715,000. Basically, the jury split the baby. It was never given an instruction on joint and seminal liability. It was never given an instruction on a guarantor. But the jury was told it had to determine what the damages were, right? For each party specifically. Before we get to each party specifically, you've got a promissory note for $500,000. You've got a balance that's due on the promissory note. You've got payments that were made, so the jury subtracts the payments and the net balance is the amount that remains due and owing under the contract. Isn't that what the jury was asked to determine by way of damages? It's unclear. It's unclear to what the jury was being asked because Well, weren't you suing in order to collect on the note? Absolutely, but I don't believe that the I think that if you take away those instructions to the jury, you're interjecting their intent, especially when there's a cross-conflict. Before we get to the trial, let me just ask what the lawsuit was about because without regarding what the jury was told, you brought an action to collect on a breach of promissory note, correct? We brought an action for breach of contract and common count against Summit LLC and its member, Todd Smith. Okay, so the action was to collect for what was due and owing under the note. That's correct, Your Honor. And that was the whole theory of the case. But what I hear you arguing now is you're entitled to more, that somehow the damages were greater than the amount that was due and owing under the contract. And where in the litigation did that litigation theory arise? At trial? After the jury returned its verdict? Before the jury was instructed? Your Honor, I believe the damages that were presented at trial were over $700,000. That's the point I'm making, that we're not trying to get double recovery. We're just trying to preserve the full recovery and not have it split because of the lack of understanding by the jury when it set out its verdict. I want to remind the Court that the special verdicts were never objected to. The jury instructions, there were weeks of meet-and-confers along with Judge Selma. Not once was the language of joint and several ever presented to the jury. But that's provided by law, is it not? There's a whole body of California case law that talks about joint and several liability when you're dealing with the obligations of the primary obligor and insured. Possibly, Your Honor, especially when they are getting full recovery on one and on the other. Where did the figure $357,500 come from, the amount that the jury awarded in the evidence? My belief, Your Honor, is that it came from splitting what our total damages were, which was over $700,000. If you add the $357,000 or times it by two, you come up with what damages were presented at trial under the contract. There had been interest that had been accruing as well. Was there a factual dispute at trial as to the amount due annoying on the note? There was not, Your Honor. There was counterclaims by the defendant against the sentient, which he did prevail on for an amount of somewhere around $143,000. What's the best authority you have for reading into the jury's verdict, what you think they intended to do? The best authority I have, Your Honor, would be, quite frankly, the... I believe it is the case in which, besides that, the judge has no discretion. It is Davis v. Mason County that the jury's award was not grossly excessive, unsupported by evidence, or based solely on speculation. Rather, it was deliberately drawn from the factual findings. Combine that case with Harper, which is, a jury's verdict must be upheld if it's supported by substantial evidence. Another issue I want the court to know is that when the jury verdict was read, there was no objection as to vagueness made by the defendant at that time. And the jury was dismissed, which should have happened if they had some objection, or it was unclear, but it should have been remanded back to the jury before it was dismissed. Why should you have done it? We believed it was clear. We didn't believe it. So did they. I mean, maybe I'm looking at the case too simply, but the jury awards one side $143,000, the jury awards the other side $357,500. If I add those two numbers together, I get to $500,500. I believe you're mistaken, Your Honor. Am I wrong? It's $357,000 for the plaintiff from each defendant, and then there was an award for the defendant for $143,000. Okay, but you said it was a compromised verdict, right? Right. So at this point, it stands that the total amount my client can achieve is $357,000 minus $143,000, which puts it well below what it was asking for. Counsel, can you just point to me in your brief where you say that you're actually entitled to over $700,000? It's not in my brief, Your Honor. It's actually in the appellee's brief, which states that the note was for $500,000 plus interest, and it even allocates how that $500,000 was supposed to be. Well, where did you argue to the district court that you were entitled to a total judgment that the damages that you suffered with the loss of principal and interest was over $700,000? Or to the jury? I believe that it would be in the factual findings of the court. It was not addressed in my brief directly to your Honor. Did you argue at trial to the jury that we want a verdict in the amount of $700,000? I didn't try the case, Your Honor, but it was argued. Let me ask the question in a different way. Did the lawyer who tried the case for your client make that argument? Yes, Your Honor. That you were entitled to $700,000? I don't see any cite to that in your brief. I do. Where in the record can I find that? Your Honor, you would have to look at—it would not be in my brief. It would be in appellee's brief. Where is the record, counsel? Where is the evidence? Where do I look in the transcript of the trial? What page? It would be excerpt. Well, if you would like some time for rebuttal, we can— I don't want to use all your time for—if you want to reserve some time for rebuttal and see if you can find it, we'd be happy to have that citation. I don't have that, Your Honor. Thank you. Good morning. I'm Craig Carlson on behalf of the defendants appellees, Senate Capital Development and— Did you try the case? I did, Your Honor. Did they argue they were entitled to $700,000? They did, Your Honor. But I can explain why we argued they were not entitled to $700,000. In fact, I would be prospective to disagree with counsel. There was a factual dispute as to the use of this money. This was a unique promissory note and then, as Judge Thomas already pointed out, a guarantee. In fact, as you can find the note, which begins on page 45 of the supplemental excerpt for the record, it's a five-page note, section one, says use of loan proceeds. For example, there was an original issue discount, so $500,000 was not handed out. It was automatically reduced to $450,000. And we spent considerable time at trial arguing that the money had not been used, as it was supposed to be, for some of the terms of the note. One of the biggest chunks of that money was a $200,000 that was being used to buy out a member of a company that was being used to develop the casino in Reno. So we respectfully submit there was a significant factual dispute, that if the plaintiff wanted to determine how the jury was reaching its conclusion, it should have submitted interrogatories, which it did not do. Again, we believe the record shows there's evidence that the money was not used, as we believe it should have been. In addition, there was a counterclaim verdict. As Judge Talman pointed out, this is a simple case. And in fact, as defense counsel from day one on this matter, I heard about how simple this case was from day one. It was a note and guarantee case. There was only one damage for a note, and that's the amount of money that the jury determined the plaintiff was entitled to. As this Court knows from the Isaac case, cited in page 16 of our brief, under California law, and I'm not aware of other states' law, but certainly under California law, government knows, a party may not recover more than once for the same injury. As in the Isaac case, the defendant here only proved one injury. The damage is a result of summit capitals. They had to repay the note. Summit capital and Mr. Smith are jointly and severally liable for this amount as the principal abogor and guarantor under the note. So I'd like to turn to that for a moment. I'm still not understanding. During the trial, when they were arguing to the jury, did they argue that they were entitled to $700,000? I don't see that in your brief either. You totaled the award and say it comes under their theory. I think, Your Honor, the mathematics, they did a trial with the interest on top of the $500,000. Was that $700,000? It was $715,000. That is correct. Okay. We didn't put it in our brief because we didn't believe it was our burden to do so. Yeah. Okay. I just. Yeah. But they did make the argument. She said that you had it in your brief and I didn't find it in your brief. And I don't recall. I know we, part of the subpoena license of the record, when we talked about whether it was the motion in opposition to the attorney's fees or several motions to alter or amend the judgment or to oppose the altering or amending of the judgment based on the various judgments that were submitted. Well, what was the evidence supporting the $357,000? Our evidence was that there was a note for the, I don't want to say nominal amount, for the face value of $500,000. But then we presented evidence that the note was not used as it was supposed to be. This was not a simple case where they paid my client or the corporate client, Soma Capital, $500,000. The note, the money was actually held by the employee of the note or the, that's not the right word. The money was held by ascendant and was supposed to be distributed pursuant to the terms of Paragraph 1 of the loan proceeds. And our evidence was it was not done as it was supposed to be done, most significantly because the $200,000, which was the amount of money to buy out a corporate partner in the company that was developing this casino, that money was never done and they were never bought out. But again, this was a note and guarantee case. Mr. Smith's only liability in this case arises out of the guarantee. And as I think Judge Tomas already stated, in reality, what Cindy is trying to do here is turn longstanding California law relating to principals and obligors on its head because her intention is to claim there are two separate judgments. Let me make your opponent's argument for her in the form of a question. If Mr. Smith is the guarantor of the note and the note is breached and the amount of damages are $500,000 in principal plus $215,000 in interest, why wouldn't Mr. Smith be liable for $715,000? Because it was for the jury to determine what the amount of damages were and they determined it was $357,500. In fact, Your Honor, Cindy might have an argument if the verdict and the amounts as to some of the capital on Mr. Smith didn't match up. That might show that there's something more going on there. A guarantor can only be responsible for the damages caused by the principal. In fact, Your Honor. But to make counsel's argument, under her theory, if she's right, if the jury found in essence the damages were $700,000 and awarded $357,500 against both Mr. Smith and the other party, that is $715,000 in this account. That is correct mathematically. But there's got to be some evidence of damages, Your Honor. The evidence is breach of the $500,000 principal amount plus interest and whatever else the note authorized in recovery. But the evidence also demonstrated that $500,000 was never paid to some account. $450,000 was supposed to be parceled out and less than that was parceled out. So our position was they were not damaged by the amount of the note in interest because that amount of money, that amount of consideration, had not been provided to some account. In fact, Your Honor, we think the evidence that there were not damages of $750,000 is supported not only by the reduction in the damage award provided to Ascendium, but also in SOMA Capital's recovery of the counterclaim. Even without evidence in the excerpts of the record as to what the evidence of trial was, in and of itself we would suggest that the counterclaim verdict demonstrates that even in a note case, Ascendium did not do all they needed to do such that SOMA Capital was damaged. Your Honor, we did not cite the case, but there's a 1987 Niederer case out of the California Public Appeals that actually is cited by the New York Times Company case. It's not on page 15 of our brief, but I think actually brings us to the conclusion here. The guarantor's obligation rests on the contract of guarantee. And that guarantee is found in this instance in supplemental excerpts of the record, pages 52 and 53. The guarantor's obligation doesn't rest on the note itself. But as Niederer report stated, the guarantee in note must be construed to be but one instrument constituting a single contract upon which the liability of the guarantor to extend this obligation is commensurate with that of the maker of the note. And that's what I was mentioning previously. If the verdicts as to SOMA Capital, Mr. Smith, did not match up, then there might have been an issue where the jury had done something improper. But because under longstanding California law, a guarantor and a principal are jointly and severally liable because the only evidence in this case was that there was a note which Mr. Smith guaranteed, his liability must be the same and it must be jointly severed with the obligor, SOMA Capital. If there are no further questions, we'd ask that this Court uphold the second and the judgment. Thank you. Your Honor, I just want to point out that it's becoming a guessing game all around. They're contending that there was a factual dispute about $200,000. How does that mathematically add up to $357,000? It doesn't. I think that Your Honor's point that $357,000 times 2 is exactly the damages we were asking for and doesn't calculate to any of the damages they were claiming that were actually due. Therefore, I believe that when they weighed their arguments for a joint and several liability issue to be raised at the district court either in the special verdict, in the jury instruction, or after the verdict was read, then the verdict should have been taken as it was cited exactly by the jury. Any other reading of it would be interjecting what the jury's intent was. The problem I have with your argument is the trial judge who sat there and listened to all of the evidence at the trial, was convinced that what the jury meant was to return an award of damages of $357,000 and applying California surety ship law, it's joint and several. Now, we can speculate all we want, but I guess if I have to err on the side of guessing, I'm going to go with the district or with the trial court who actually heard the whole trial and applied what I think is very clear California law on the surety ship. Well, I think that comes back to why we're here today, is the discretion and what a district court has when it's never been raised, not even by the district court itself. But the jury doesn't have the discretion under California surety ship law to apportion damages between the primary obligor and the surety. The jury can only enter an award in the amount of the surety's obligation, whatever the underlying obligation is. And you're asking us to carve out an exception based on what you claim is an ambiguous set of jury instructions. I am not, Your Honor. I'm asking you to apply what the jury knew, if the jury had known that joint and several would have applied here, because their jury instructions in particular said you must make a finding to each party separately. So it's counterintuitive for the jury to be thinking that this is something that's going to be joint and several. But your theory is correct that that is not legal as a matter of surety ship law. That would be a false instruction, which is error as a matter of law. And presumably the district court corrected that problem by entering an amended judgment which conforms to the law. I respectfully disagree because if it was an error, then they should have supplemented or they should have pushed it out and then they would have known that this award might be shared by both parties. I did not understand that there was an argument over the instructions. There was not an argument. Okay. So what in the instructions told the jury that they could find that each one was liable for half? Because that seems to be your, that the principle and the surety are both liable for half. Jury instruction number 12 was submitted to the jury, which said that they must make a finding to each party separately. But that wasn't a damage instruction. That's the assurance that every party before the court will be judged on their own merits. That wasn't part of the damage instructions, was it? No, but if you combine that with a special verdict that says, what do you find some capital group to be liable for? And they state a number. What do you find Todd Smith to be liable for? They state the number. You combine that with a layman such as people on the jury that might not have an understanding of joint and several in California surety law. If they had known or if that instruction was improper, then they might have awarded 715 to each instead of splitting the baby, thinking that that was going to get them to the entire number, which seems to be the conclusion you can find. Okay, but I don't, I just, okay. So can you give me a site, again, to where your argument was that you were actually entitled to 715 from each? It was in the Appellee's Supplemental Excerpt 45, which outlines the note that it was 500,000 plus there was allowances for interest. And further, the appellees have waived their argument. I don't have the R45. What is it? It is the paragraph one of the note, which talks about the entire amount of the note and how it was to be allocated. So the only evidence that the jury had was read the note and figure out what the contract said? No, Your Honor. There was much testimony given not only by the plaintiffs, but by the other member of the LLC, Patrick Owen, who also testified that Todd Smith had breached the contract and had failed to perform and disputed also that the funds were allocated wrong. I felt that that was going outside of what we were discussing today. Was there a demonstrative exhibit that was like a piece of butcher paper in front of the jury during closing that said here's the amount of money that we want and here's how you get there? Again, Your Honor, I didn't try it, but I was there watching the trial. I believe that there was an expert that put together the interest bearing on each on the note over time and how it got into the number of $715,000. But you don't cite that in your? I do not, Your Honor. Okay. All right. Thank you. Are there any further questions? Thank you. The case is arguably submitted for decision. The next case, our counsel here for the next case, we'll call Society and the Divine Word v. Napolitano.
judges: Jarvey, Schroeder, Tallman